## JOHN McSHAIN, Inc. v. DISTRICT OF COLUMBIA.

### No. 11543.

United States Court of Appeals
District of Columbia Circuit.

Argued April 14, 1953.

Decided June 25, 1953.

As Amended July 1, 1953.

Petition for Rehearing en Banc Denied
Aug. 17, 1953.

Columbia to construct the Dupont Circle Underpass; a contract with private interests for the construction of the Editors Building; a contract with the United States Government for construction of the General Accounting Office Building. All three contracts antedate the Act. The tax here in controversy is a use tax for the calendar month of September, 1949, based upon certain purchases of materials by petitioner during that month on which no sales tax was paid. The materials were for use in building the structures just mentioned, which are located in the District of Columbia.

Petitioner's first contention is that the Tax Court erred in failing to hold that purchases in connection with all three of these construction contracts were exempt from District of Columbia sales and use taxes because each construction contract was for a lump sum and was entered into prior to the passage of the Act. Petitioner argues that assessment of any tax on the basis of these purchases impairs petitioner's rights under existing valid contracts, and is retrospective, discriminatory, and unconstitutional.

Mr. Michael M. Doyle, Washington, D. C., with whom Mr. Fred J. Rice, Washington, D. C., was on the brief, for petitioner.

Mr. Harry L. Walker, Asst. Corp. Counsel for the District of Columbia, Washington, D. C., with whom Messrs. Vernon E. West, Corp. Counsel, and Chester H. Gray, Principal Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before EDGERTON, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

John McShain, Inc., petitions this court for review of a decision of the District of Columbia Tax Court requiring it to pay certain deficiencies in use taxes assessed under the District of Columbia Revenue Act of 1949, approved May 27, 1949.[1]

Petitioner is in the construction business. Three of its contracts are involved in the instant case: a contract with the District of

This contention must fail. The personal property involved was purchased by petitioner subsequent to the passage of the statute. And it is the purchase (or use) itself, not the signing of construction contracts ultimately necessitating the purchase, which is the taxable event. It is irrelevant in the present connection that the construction contracts were made prior to the date of the Act: a statute is not necessarily objectionable as being retroactive if antecedent facts affect its operation. Neild v. District of Columbia, 1940, 71 App.D.C. 306, 110 F.2d 246. Nor does the statute impair a contractual obligation. The imposition of a new tax, or an increase in the rate of an old one, is one of the usual hazards of business enterprise: seldom, if ever, does such an event impair the obligation of a pre-existing contract. See Wiseman v. Gillioz, 1936, 192 Ark. 950, 96 S.W.2d 459. The Contract Clause, of course, is a limitation on state rather than federal action.

---

1. 63 Stat. 112. That Act contains the District of Columbia Sales Tax Act, 63 Stat. 112 et seq., D.C.Code, § 47–2601 et seq. (1951), and the District of Columbia Use Tax Act, 63 Stat. 124 et seq., D.C. Code, § 47–2701 et seq. (1951).

Nevertheless, a measure of protection against contract impairment by the federal government is given by the Fifth Amendment. Perry v. United States, 1935, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912; Lynch v. United States, 1934, 292 U.S. 571, 54 S. Ct. 840, 78 L.Ed. 1434. But Congress was not here seeking to repudiate or render profitless petitioner's contracts with the United States and the District of Columbia. Rather, it sought additional tax revenues for the District, through a general statute affecting petitioner no more severely than others who made purchases and sales. Cf. O'Malley v. Woodrough, 1939, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289. There was no deprivation of petitioner's property without due process of law. Compare Neild v. District of Columbia, supra, 71 App.D.C. at page 313, et seq., 110 F.2d at page 253, et seq.

■ Petitioner's second contention is that the Tax Court erred in failing to hold that all purchases of materials and supplies "made pursuant to " the contracts with the United States and the District of Columbia were tax exempt, under the statutory provision exempting "Sales to the United States or the District or any instrumentality thereof." Sections 128(a), 216 (b), D.C.Code, Sections 47–2605(a), 47–2706(b) (1951). When petitioner purchased various materials and services from subcontractors for use in connection with its construction work under the master contracts, however, neither it nor its vendor was making sales of tangible personal property "to the United States or the District". State of Alabama v. King & Boozer, 1941, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3.

■ Petitioner next relies upon another statutory provision which exempts:

"Sales of goods made pursuant to bona fide contracts entered into before the date of approval of this Act: Provided, That there is a contract in writing signed by the purchaser and vendor which imposes an unconditional liability on the part of the purchaser to buy

the goods covered thereby at a fixed price and without escalator clause, and an unconditional liability on the part of the vendor to deliver a definite quantity of such goods at the contract price." Sections 128(k), 216(b), D.C.Code, Sections 47–2605(k), 47–2706(b) (1951).

Petitioner does not come within the terms of this exemption either. There is no proof of any contracts in writing between petitioner and its various vendors covering the purchase of the materials in question. Petitioner admits as much, and argues that the three master contracts meet the statutory requirement for pre-existing written contracts. But the relationship between the parties to those contracts is not that of "purchaser and vendor" in connection with the purchases here involved.

■ Finally, petitioner relies on Section 1101(d) of the governing regulations,[2] providing in pertinent part:

"(d) Where a contractor enters into a construction contract with * * * the United States or District Governments or instrumentalities thereof, such contractor may purchase such materials and supplies as are to be physically incorporated in and become real property without payment of the tax and shall not charge any such * * * government or any instrumentality of such government, reimbursement for any sales or use tax thereon. * * *"

In respect of the contracts with the Federal Government and the District, the Tax Court gave petitioner the benefit of this regulation as to certain items (e. g., cinders and rubble) which it held to be physically incorporated in, and part of, the real property. Other items which were consumed in the course of construction, such as lumber for making forms,[3] paper towels and cups, office supplies, oil, and gasoline, were held by the Tax Court to be outside the scope of Section 1101(d). The Tax Court said that the regulation "means that the material * * * must be physically present or incorporated in the structure. It is the an-

---

2. Regulations Pertaining to Sales and Use Taxes, promulgated July 12, 1949, by the Commissioners of the District of Columbia.

3. The lumber was used to make forms or molds to hold wet concrete in place during the construction of walls. This form lumber was stripped away from the con-

tithesis of consumption." We agree with this statement, and find no indication that the Tax Court incorrectly applied it. Compare Briggs & Co. v. District of Columbia, 1952, 90 U.S.App.D.C. 404, 196 F.2d 241. Exemptions are to be strictly construed against the taxpayer. See Lever Bros. Co. v. District of Columbia, 1953, 92 U.S.App. D.C. ——, 204 F.2d 39.

For the reasons given, the decision of the Tax Court will be

Affirmed.

crete after it had hardened. The forms depreciated about 20 per cent after each use, and eventually were discarded. Par-

enthetically, we note that the validity of Section 1101(d) was not in issue in this case.