**Charlene HARVEY, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**Civil Action No. 96–01865 (CRR).**

United States District Court,
District of Columbia.

Dec. 19, 1996.

Squire Padgett, Law Office of Squire Padgett, Washington, D.C., for Plaintiff.

Nicholas P. Miller, Office of the Corporation Counsel, Washington, D.C., for Defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court in the above-captioned case is the plaintiff's motion for reconsideration of the Court's Order of December 2, 1996, granting the defendant partial summary judgment on the plaintiff's claim for sexual harassment under Title VII of the Civil Rights Act of 1964, as amended. For the reasons expressed below, the Court shall deny the plaintiff's motion.

A motion pursuant to Fed.R.Civ.P. 59(e) to alter or amend judgment after its entry is not routinely granted. "The primary reasons for reconsideration of judgment are 'an intervening or change of controlling law, the availability of new evidence, or need to correct a clear error or prevent manifest injustice.'" *Nat'l Trust v. Dep't of State,* 834 F.Supp. 453, 455 (D.D.C.1993) (*quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992)), *aff'd in part and rev'd in part on other grounds sub nom., Sheridan Kalorama Historical Ass'n v. Christopher,* 49 F.3d 750 (D.C.Cir.1995). "A Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States,* 880 F.Supp. 37, 38 (D.D.C. 1995). Nor are "Rule 59(e) motions ... vehicles for bringing before the court theories or arguments that were not advanced earlier." *Natural Resources Defense Council v. United States Envtl. Protection Agency,* 705 F.Supp. 698, 701 (D.D.C.), *vacated on other grounds,* 707 F.Supp. 3 (D.D.C.1989).

■ The plaintiff does not argue that the law of sexual harassment has changed since December 2, nor does she argue that additional material evidence has come to light. She has merely attempted to reargue facts upon which the Court has already ruled, and has brought forth a new legal theory which she failed to present in opposition to the defendant's summary judgment motion. Thus, denial of the plaintiff's motion is appropriate.

The majority of the plaintiff's supporting memorandum argues (based on no new facts) that plaintiff's former first-line supervisor, Mr. B.O. Robinson, and her second-line supervisor, Mr. Harry Jones, "conspired" to give Mr. Robinson the opportunity to rape the plaintiff.[1] As the Court has already noted, the rape allegation, if true, is horrific. Nevertheless, the alleged rape was not the subject of a timely EEOC charge, and the plaintiff does not dispute this material fact.

Instead, she attempts to rely on the continuing violation doctrine to argue that the alleged rape is connected with the D.C. Fire Department's purported " 'sexist culture,' " a culture that "resulted in a number of the acts that occurred within the 300 day time frame." In her motion for reconsideration, however, the plaintiff fails to specify what "acts," if any, support this assertion. The plaintiff's motion could be denied on this ground alone.

■ As noted in the December 2 Order, the only evidence in the record that arguably shows a "sexist culture" were the two unreported, December 1994 incidents involving co-workers who allegedly touched the plaintiff and made lewd comments to her. The plaintiff, however, has failed to offer any evidence showing that the defendant either knew or should have known of these co-worker incidents and failed to take prompt remedial action once it learned of them. Thus, the defendant cannot be held liable for such conduct as a matter of law. *See Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994).[2] It would require more than an inferential leap to conclude that two isolated harassment incidents by co-workers demonstrates a "sexist culture" permeating the D.C. Fire Department.[3]

■ Other than the plaintiff's unfounded and inadmissible speculation that the co-workers' conduct was somehow "foreseeable"

1. Without any citation to the evidentiary record, the plaintiff attempts to support this conspiracy theory by speculating that " 'Robinson gave [the plaintiff] a drink laced with an unknown drug' " to accomplish the alleged rape. Plaintiff's Memorandum at p. 3; *see also id.* at 2. The Court finds counsel's use of quotation marks, without any citation to the evidence, to be highly misleading and dishonest to the record. The plaintiff cannot create a genuine issue for trial through speculation or through her counsel's "interpretations" of the evidence.

2. Other alleged adverse employment actions which may have taken place during the limitations period include increased scrutiny of the plaintiff's attendance, the failure of the plaintiff's name to appear on an attendance roster, the plaintiff being called a "habitual liar" by her new supervisor, and denial of the plaintiff's requests for leave. While it is true that patterned or pervasive conduct need not have sexual overtones in order to constitute sexual harassment, (*see McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C.Cir.1985)), the plaintiff herein has submitted no direct, circumstantial or statistical evidence showing that the above-listed acts would not have occurred **but for the plaintiff's sex**. However, to the extent this conduct occurred after the plaintiff complained about sexual harassment in November of 1993, it may be evidence of retaliation, and the plaintiff will have the opportunity to make this argument at trial.

3. The plaintiff also has asserted that during some unspecified period of time, she was the subject of "rumors" that she was "real easy" and a "whore". However, she fails to specify who allegedly spoke these rumors and has not indicated to the Court that she can or will do so before trial. Therefore, this proffer of evidence constitutes inadmissible hearsay, lacks evidentiary foundation, and is insufficient to defeat the defendant's motion for summary judgment. *See McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir.1996). Additionally, the plaintiff has not created a genuine issue that these alleged "rumors" were spoken during the applicable limitations period or that any of the defendant's management-level employees were responsible for the creation or perpetuation of such rumors. Thus, the alleged rumors do not create a genuine issue for trial on this independent ground. *See Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 708 (7th Cir.1995) (holding that the plaintiff's "amorphous allegations of an atmosphere of sexually suggestive joking carry no weight ... since the record is completely barren of so much of a sliver of substantiation").

by Mr. Jones and Mr. Robinson over two years earlier, there simply is no evidence of a nexus between the alleged off-duty rape by Mr. Robinson and these two unreported co-worker incidents. *See Koelsch*, 46 F.3d at 707 (holding that, as a matter of law, there was no nexus between the company president's unwelcome touching of the plaintiff which occurred outside of the statute of limitation period and alleged suggestive and derogatory jokes told by employees, where the president's involvement with these jokes was "at the extreme periphery"). The plaintiff has pointed to nothing even remotely suggesting that on the night of the plaintiff's alleged rape, Mr. Jones and Mr. Robinson conspired not only to rape the plaintiff,[4] but also to subject her to a four-year campaign of harassment (sexual or otherwise), a conspiracy that later would be joined in and carried on by purportedly numerous other supervisors and co-workers. Such speculation is not evidence and does not permit the plaintiff to invoke the continuing violation doctrine.[5]

Finally, the plaintiff advances for the first time the bizarre legal argument that she was subject to *quid pro quo* sexual harassment. Specifically, she argues that Mr. Jones and Mr. Robinson "attempted to buy [her] silence about the rape by the subsequent acts of unfair treatment about which she complained," and that these acts constitute *quid pro quo* sexual harassment. This is complete legal nonsense.

■ In the D.C. Circuit, to impose *quid pro quo* liability on the employer, "the supervisor must have wielded the authority entrusted to him to subject the victim to adverse job consequences as a result of her refusal to submit to unwelcome sexual advances." *Gary v. Long*, 59 F.3d 1391, 1396 (D.C.Cir.), *cert. denied*, —— U.S. ——, 116

S.Ct. 569, 133 L.Ed.2d 493 (1995). Here, Mr. Robinson is the only supervisor who allegedly made a sexual advance to the plaintiff. However, the plaintiff does not argue that Mr. Robinson threatened adverse job consequences if she refused his advance. Indeed, the plaintiff claims that she was asleep or unconscious at the time of this alleged advance. Moreover, none of the adverse employment actions allegedly suffered by the plaintiff—name-calling, denial of leave time, unfair scrutiny over attendance—were carried out by Mr. Robinson. Rather, these acts purportedly were carried out by Harry Jones, Tony McMillian, Lillian Carter, and Jerome Stocks. The plaintiff has neither alleged, nor has she submitted any evidence showing, that these individuals made sexual advances toward her and then subjected her to adverse job consequences because she refused these advances. Accordingly, the plaintiff has neither stated a claim for *quid pro quo* sexual harassment, nor has she created a genuine issue as to such a claim.

### ORDER

For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 19th day of December, 1996

ORDERED that the plaintiff's motion for reconsideration of the Court's Order of December 2, 1996 shall be and hereby is DENIED.

---

4. Indeed, the undisputed, **admissible** evidence proffered by the defendant shows that Mr. Jones did not know of the plaintiff's rape allegation against Mr. Robinson until over a year after the alleged rape had occurred. *See Affidavit of Harry V. Jones, Jr.* at ¶ 8.

5. The Court further notes the undisputed material facts that while the plaintiff believed on September 21, 1992 that she had been raped, she did not report this incident to her superiors until November of 1993 (over a year later) and did not

file a charge with the EEOC until July 21, 1994 (almost two years later). Under these circumstances, the plaintiff cannot rely on the continuing violation doctrine, because she either knew or should have known immediately after she allegedly was raped that she had suffered harm and discrimination, but she did nothing to perfect her Title VII rights in a timely manner. *See Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir.1994).