**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, et al., Plaintiffs**

v.

**DISTRICT OF COLUMBIA FINANCIAL RESPONSIBILITY AND MANAGEMENT ASSISTANCE AUTHORITY, et al., Defendants**

**No. CIV. A. 97–807JGP.**

United States District Court, District of Columbia.

Feb. 15, 2001.

Mark D. Roth, American Federation of Government Employees, Anne Marie Wagner, Washington, DC, for American Federation of Government Employees, AFL–CIO, and its affiliated Locals 383, 631, 727, 872,, 1000, 1975, 2553, 2725, 2737, 2741, 2978, 3406, 3444, 3721, 3871, John P. Frye, plaintiffs.

Mark D. Roth, American Federation of Government Employees, Anne Marie Wagner, Washington, DC, Gloria Peele clement, Commodity Futures Trading Com'n, Washington, DC, for Amos Sharpe, Toni Sawyers, Albert C. Murray.

Mark D. Back, Agnes M. Rodriguez, Office of Corporation Counsel, D.C., Office of the Administrator, Washington, DC, Francis Sherbert Smith, Daniel A. Rezneck, D.C. Financial Responsibility &

Management Assistant Author., Washington, DC, for District of Columbia Financial Responsibility & Management Assistance Authority, Valerie Holt, defendants.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

Currently before the Court is defendants' **Motion to Dismiss the First Amended Complaint** [# 51], which was filed on November 27, 2000. For the reasons stated in this memorandum, defendants' Motion to Dismiss the First Amended Complaint is granted.

## BACKGROUND

This dispute arises from a challenge to an order of the District of Columbia Financial Responsibility and Management Authority ("Authority" or "Control Board"), dated December 27, 1996, which mandated a change to the way in which the Chief Financial Officer of the District of Columbia ("CFO" or "District") calculates overtime pay for all District employees. Various unions challenged the order as being beyond the scope of the Control Board's authority since it abrogated certain provisions of existing collective bargaining agreements between the District and the unions which already specified how overtime pay was to be calculated.

In its Memorandum dated and filed on September 22, 2000 ("September 22 Memorandum"), the Court granted summary judgment in favor of the union-plaintiffs on the *ultra vires* issue, dismissed the individual employee-plaintiffs for lack of standing, and denied as moot defendants' motion to dismiss the amended complaint. *See generally* September 22 Memorandum. In the accompanying order, the Court adjudged and declared that the Control Board had exceeded its statutory authority in ordering the District to repudiate provisions of collective bargaining agreements between the District and the plaintiffs that govern the conditions for payment of over-

time pay for covered employees, and further declared, as such, the Control Board's order was without legal effect. Furthermore, the Court adjudged and declared that to the extent the District had implemented the Control Board's order, it was in breach of the relevant collective bargaining agreements existing between the District and the plaintiffs. The Court further ordered the District of Columbia Chief Financial Officer to effect full compliance by the District of Columbia with the terms of the collective bargaining agreements. Finally, the Court ordered that any determination of damages owed to employees covered by the collective bargaining agreements, such as lost leave or overtime pay, was to be made in a manner consistent with the grievance and arbitration procedures found in the applicable collective bargaining agreements.

On November 14, 2000, Congress enacted the District of Columbia Appropriations Act for fiscal year 2001, which was signed into law by the President on November 22, 2000. The relevant portion of this legislation is as follows:

Sec. 156. (a) Notwithstanding the provisions of the District of Columbia Government Comprehensive Merit Personnel Act of 1978 (D.C. Law 2–139; D.C.Code 1–601.1 et seq.), or any other District of Columbia law, statute, regulation, the provisions of the District of Columbia Personnel Manual, or the provisions of any collective bargaining agreement, employees of the District of Columbia government will only receive compensation for overtime work in excess of 40 hours per week (or other applicable tour of duty) of work actually performed, in accordance with the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

(b) Subsection (a) of this section shall be effective December 27, 1996. The Resolution and Order of the District of Columbia Financial Responsibility and Management Assistance Authority, dated December 27, 1996, is hereby ratified

and approved and shall be given full force and effect.

H.R. 5633, § 156, 106th Cong. (2d. Sess.2000)(hereinafter "Sec. 156").

Based on this new legislation, on November 27, 1999, defendants moved to dismiss the first amended complaint based on Congress's subsequent ratification of the order in question. As defendants theorize, Sec. 156 is the explicit grant of Congressional authority to the Control Board that this Court found lacking in its previous grant of summary judgment to the plaintiffs. Plaintiffs have filed their opposition. Defendants have filed a reply. The Court is ready to rule on this new motion to dismiss.[1]

### DISCUSSION

The Court's analysis of the effect of the subsequent congressional legislation is governed by the D.C. Circuit's recent opinion in *Thomas v. Network Solutions, Inc.*, 336 U.S.App.D.C. 74, 176 F.3d 500 (1999), *cert. den.* 528 U.S. 1115, 120 S.Ct. 934, 145 L.Ed.2d 813 (2000). In *Thomas*, internet domain name registrants brought suit against the National Science Foundation ("NSF") challenging, *inter alia*, the assessment of domain name registration fees as an illegal tax. The district court dismissed the complaint, but held that the domain name fee was a tax not authorized by Congress and thus unconstitutional. Within weeks, Congress passed legislation which granted NSF retroactive authority to collect the domain fees in question. *Thomas*, 336 U.S.App.D.C at 79, 176 F.3d at 505. Holding that the new law ratified the domain name fees assessed by NSF, the district court then dismissed the sole surviving claim. *Id.* The district court also denied a motion for reconsideration filed by the plaintiffs. *Id.*

The court of appeals affirmed the district court's decision. In considering whether the legislation passed by Congress effectively ratified the domain name fee scheme, the court began with the proposition that a lack of congressional authorization "is not necessarily fatal because legislation may confirm and render lawful otherwise unlawful federal agency actions[.]" *Thomas*, 336 U.S.App.D.C. at 80, 176 F.3d at 506. The court of appeals then articulated the standard for determining the effectiveness of the congressional ratification. As the court stated,

[an] old Supreme Court case—rarely cited but never overruled—stands for the proposition that Congress "has the power to ratify the acts which it might have authorized" in the first place, so long as the ratification "does not interfere with intervening rights."

*Id.* (*citing United States v. Heinszen*, 206 U.S. 370, 384, 27 S.Ct. 742, 51 L.Ed. 1098 (1907)).

Pursuant to *Thomas*, the Court's inquiry into Congress's ratification of the Control Board's order focuses on three issues—1) whether Congress intended to ratify the Control Board's order when it passed Sec. 156; 2) whether Congress had the authority to authorize the Control Board's action in the first place; and 3) whether that ratification interferes with intervening rights. The Court will address each of these issues in turn.

### A. Congress's intent

In determining Congress's intent, the Court does not need to look any further than the explicit language of Sec. 156 itself. It is apparent that Congress intended to bind all employees of the District to the rules regarding compensation for over-

---

1. On October 5, 2000, defendants filed a Joint Motion to Alter or Amend Judgment Filed on September 22, 2000. In this motion, the defendants sought clarification regarding the date of effectiveness of the injunctive relief ordered by the Court. Furthermore, defendants sought the deletion of the clause of the Court's order pertaining to the determination of damages owed to employees covered by the collective bargaining agreements. That motion is fully briefed, and remains pending. Due to the potentially conclusive nature of the present motion to dismiss, it is being considered first.

time work found in the Fair Labor Standards Act ("FLSA"). Furthermore, by making this provision retroactively effective as of the date of the Control Board's order, it is clear that Congress intended to ratify that order. As defendants point out, "plaintiffs make no contention or effort to show that Congress intended anything less than fully effective ratification of the [Control Board's] action with respect to the determination of overtime for [District] employees". Reply Memorandum of Defendants in Support of Motion to Dismiss the First Amended Complaint ("Defendants' Reply")(filed Jan. 2, 2001) at 1.

## B. Congress's power

■ As *Thomas* and *Heinszen* establish that Congress has the power to ratify acts which it might have authorized in the first place, the Court must now determine whether Congress has the power to implement the adoption of the FLSA overtime standards as an original matter. Although this Court held that the authority granted to the Control Board does not include the power to abrogate existing collective bargaining agreements, nothing in the Court's earlier memorandum spoke to the issue of whether Congress can order an abrogation of existing collective bargaining agreements.

■ It is, of course, well settled that Congress exercises plenary power over the affairs of the District of Columbia. U.S. Const., Art. I, § 8, cl. 17; *see also Palmore v. United States,* 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). It is also well settled that Congress is not circumscribed by the Contract Clause of the U.S. Constitution, which prevents states from interfering in contracts. Therefore, it is clear that Congress does have the power to enact, as an original matter, the FLSA standards regarding overtime pay for District employees.

Plaintiffs do not dispute that Congress has the power to enact the FLSA overtime standards for District employees. *See* Plaintiffs' Opposition to Defendants' Mo-

tion to Dismiss the First Amended Complaint ("Plaintiffs' Opposition")(filed Dec. 21, 2000) at 3–4. However, plaintiffs approach the issue another way, stating that the "question is not whether Congress could have taken the action itself but whether it had the capacity to bestow that power upon the Control Board." *Id.* at 3. As defendants point out, *Thomas* and *Heinszen* do not require such a showing, but it is useful to consider the arguments plaintiffs raise regarding congressional power in this regard. Plaintiffs make two arguments as to why Congress does not have the power to bestow authority to the Control Board in this case, and the Court will consider each in turn.

Plaintiffs' first argument regards constitutional restraints on the power of Congress. The first such restraint has to do with the non-delegation doctrine. Plaintiffs rely on *Byrd v. Raines,* 956 F.Supp. 25, 38 (D.D.C.1997), in which the court held that the Line Item Veto Act's grant of legislative repeal power to the President violated the Presentment Clause of the Constitution. Plaintiffs take their "delegation" theme a bit further by citing to *Stoutenburgh v. Hennick,* 129 U.S. 141, 9 S.Ct. 256, 32 L.Ed. 637 (1889), in which the Supreme Court ruled that Congress may not delegate authority to regulate interstate commerce to the District.

■ Plaintiffs attempt to cast the present situation as if Congress had delegated to the District "the power to coin money or enter into treaties, which are also powers reserved to Congress and forbidden to the states under Article I, § 10." Plaintiffs' Opposition at 6. Since delegations such as these would clearly run afoul of the constitutional framework, so too must this one. This analogy, however, rings a bit untrue. While it is true that the "non-delegation" doctrine prohibits Congress from delegating too much of its responsibilities to other players in the national government, namely the President or the various federal agencies, or to the states, surely the doc-

trine does not apply to the situation presently before the Court. The Control Board, which was empowered by Congress to help rectify the financial and management problems facing the District, is not another independent actor in the federal system. The Control Board has always clearly been acting as Congress's agent since its inception. *See generally Shook v. District of Columbia Financial Responsibility and Management Assistance Authority,* 328 U.S.App.D.C. 74, 76, 132 F.3d 775, 777 (1998).

The second constitutional restraint has to do with the Contract Clause itself. Plaintiffs argue that pursuant to the District of Columbia Self–Government and Governmental Reorganization Act of 1973 ("Home Rule Act"), Pub.L. 93–198, 87 Stat. 774, the delegation of legislative power to the District over its own affairs is limited by the Contract Clause of the Constitution.[2] According to plaintiffs,

> [a]lthough the relevant legislative history does not reveal congressional intent with regard to conditioning each of these delegations on compliance with the Contract Clause restriction, there is ample reason to conclude that Congress correctly assumed that a valid transfer of legislative power to the District—or the Control Board—required the incorporation of that constitutional restriction.

Plaintiffs' Opposition at 5.

Plaintiffs contention then is that Congress had no discretion when it restricted its grant of legislative power to the District, that this restriction was mandated by the Constitution itself. *See* Plaintiffs' Op-. position at 6 ("there is simply no textual, or other, grounds for distinguishing that prohibition from other constitutional restraints on a congressional delegation of power to the District government"). How-

ever, since the Contract Clause applies only to the states, of which the District is not one, it follows that the application of the Contract Clause to the District is by virtue of the Home Rule Act itself and not by virtue of any constitutional imperative.

The D.C. Circuit has considered this issue in *Washington Teachers' Union Local # 6 v. Board of Education,* 324 U.S.App.D.C. 1, 109 F.3d 774 (1997). In *Washington Teachers' Union Local # 6,* the District Board of Education laid off teachers during an emergency reduction-in-force ("RIF") authorized by Congress. The teachers' union challenged the RIF as a violation of existing collective bargaining agreements. The D.C. Circuit rejected this argument, holding that

> [a]lthough the District of Columbia is subject to the Contract Clause, D.C.Code Ann. § 1–204 (1992 Repl.), the legislation which led the Board of Education to repeal its reduction-in-force regulations was enacted by Congress, and Congress is not subject to the Contract Clause, even when legislating for the District.

*Washington Teachers' Union Local # 6,* 324 U.S.App.D.C. at 5, 109 F.3d at 778.

The District of Columbia Court of Appeals has also dealt with this issue and reached a similar result in *District of Columbia v. American Fed'n of Gov't Employees,* 619 A.2d 77 (D.C.), *cert. den.* 510 U.S. 933, 114 S.Ct. 347, 126 L.Ed.2d 312 (1993). In *District of Columbia,* the court considered the challenge of several government employees' unions to the District of Columbia Appropriations Act of 1993, which, *inter alia,* required furloughs of employees covered by certain collective bargaining agreements and the elimination of within-grade pay increases and their accrual of time for purposes of future in-

---

2. Pub.L. 93–198, § 302, (codified at D.C.Code § 1–204) states:

Except as provided in section 601, 602, and 603, the legislative power of the District shall extend to all rightful subjects of legislation within the District consistent with the

Constitution of the United States and the provision of this Act subject to all the restrictions and limitations imposed upon the states by the tenth section of the first article of the Constitution of the United States.

creases. *Id.* at 79. The trial court had granted an injunction on implementing the requirements of the Appropriations Act on the grounds that the Appropriations Act violates the Contract Clause.

In reversing the trial court's injunction, the D.C. Court of Appeals ruled that there was no Contract Clause violation. The court rejected the trial judge's finding that when Congress legislated for the District, it was acting like a state legislature, and thus its enactments were subject to constitutional restraints on state power. The court of appeals concluded that the precedent relied on by the trial judge did not deal specifically with the Contract Clause. Recalling previous cases, the court held that "the Contract Clause, applicable only to the fifty states, does not impose a limitation on congressional legislation for the District." *Id.* at 81.

The court also considered Supreme Court precedent which "confirmed that whenever Congress exercises for the District the 'legislative powers that the legislature of a State might exercise within the State,' Congress may 'not contravene any provision of the Constitution of the United States.'" *Id.* at 82 (*quoting Palmore v. United States,* 411 U.S. 389, 397, 93 S.Ct. 1670, 1676, 36 L.Ed.2d 342 (1973)). This argument is similar to one made by plaintiffs in this case. However, the D.C. Court of Appeals held that this statement "cannot legitimately be construed to mean that Congress is limited by the Contract Clause—which applies only to the fifty 'states.'" *District of Columbia,* 619 A.2d at 83. Furthermore, the court held that "[n]either *Palmore* nor any of the cases cited there supports the proposition ... that a constitutional limitation on the states imposed a limitation on Congress when it acts as legislature for the District." *Id.* The court went on to clarify that the

Supreme Court caselaw goes only far enough to suggest that Congress, when acting as a local legislature for the District, (1) may have greater powers than

Congress can exercise over the nation as a whole, but (2) may not contravene constitutional limitations applicable to Congress acting as Congress. Any argument that Congress, acting as the District's local legislature, is also subject to constitutional limitations on the states, such as the Contract Clause, is therefore premised on the authority of analogy alone. Such a decision would be unprecedented; we have no authority to impose such a limitation on congressional power. Accordingly, if there is to be any Contract Clause-type limitation on Congress in the exercise of its plenary power over the District, that limitation would have to be self-imposed through legislation. Congress is not subject to the Contract Clause, as such, when Congress legislates for the District.

*Id.* at 84 (citations omitted).

■ The implication of *Washington Teachers' Union Local # 6* and *District of Columbia* is clear. Congress does have the power to enact legislation for the District of Columbia free of the constraints of the Contract Clause. In its discretion, Congress has chosen to incorporate the limitations of the Contract Clause in the system of self-government established for the District by the Home Rule Act. However, that does not constitute any forfeiture on Congress's part of the prerogative to legislate for the District in a manner that is not consistent with the Contract Clause. This result is square with the Contract Clause itself, and the provision of the Constitution which gives Congress plenary power to manage the District's affairs.

■ Plaintiffs' second argument regarding the legality of Congress's ratification of the Control Board is, to put it succinctly, that the Control Board's order was an illegal repeal of the congressional grant of legislative power to the District Council found in the Home Rule Act. Plaintiffs state that "Congress could not have constitutionally empowered the Control Board,

or any District government entity, to repeal the grant of legislative authority to the District Council contained in the Home Rule Act." Plaintiffs' Opposition at 8. The argument seems untenable, especially given the constitutional grant to Congress of plenary power over the District. What this plenary power means, in other words, is that what Congress giveth, Congress can taketh away. The precarious nature of the District Council's power is exemplified by the D.C.Code itself, which states, in relevant part, that

> [n]otwithstanding any other provision of this Act, the Congress of the United States reserves the right, at any time, to exercise its constitutional authority as legislature for the District, by enacting legislation for the District on any subject, whether within or without the scope of legislative power granted to the Council by [the Home Rule] Act, including legislation to amend or repeal any law in force in the District prior to or after enactment of this Act and any act passed by the Council.

D.C.Code Ann. § 1–206 (1999).

█ Thus the D.C.Code itself establishes that Congress may freely repeal any actions taken by the District Council. Its repeal of the overtime provisions of the collective bargaining agreements between the District and its employees came in the form of ratifying the Control·Board's order. Since Congress exercises plenary power over the District, it may modify or repeal legislation regarding the District as it sees fit. The D.C. Circuit found as such with regards to the District's Charter itself. As the court said, the "Charter ... is simply an Act of Congress which can be modified either expressly or impliedly by Congress as it wishes." *Shook,* 328 U.S.App.D.C. at 79, 132 F.3d at 780. Thus the congressional ratification of the Control Board's order was an implied repeal of action taken by the District Council with

regards to approval of the collective bargaining agreements in question.

In conclusion, the second prong of the *Thomas* inquiry must be answered in the affirmative. Clearly Congress has the power to implement the FLSA overtime standards for employees of the District. Congress's exercise of that power is not limited by the Contract Clause. The Control Board is an agent of Congress working on improving the finances and management of the District. Congress, therefore, clearly has the power to authorize the Control Board to undertake any action with regard to the District that it could have undertaken itself.

### C. Interference with intervening rights

Having concluded that Congress intended to ratify the Control Board's order, and that Congress had the authority to authorize that which it chose to ratify, the Court now must determine whether that ratification interfered with any intervening rights. Plaintiffs claim that Sec. 156 "constitutes retroactive legislation that impermissibly interferes with intervening rights." Plaintiffs' Opposition at 9. The rights which plaintiffs claim were interfered with have to do with that part of the Court's order, filed September 22, 2000, which provided for individual plaintiffs to pursue grievances through arbitration. "Consistent with the Court's Order, representatives from plaintiff unions filed grievances on behalf of bargaining unit employees, alleging violations of the collective bargaining agreements arising from the District's implementation of the Control Board's Order." Plaintiffs' Opposition at 9.[3] Plaintiffs claim that since Sec. 156 would deprive them of their rights to pursue the contractual remedies ordered by the Court, it is unconstitutional. *Cf. Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995)(Supreme Court held that when a court has issued a final

---

**3.** Attached to plaintiffs' opposition are copies of the class action grievances filed by various unions.

judgment in a particular case, Congress may not enact retroactive legislation that would alter the outcome).

Thus, if the Memorandum and Order filed by the Court on September 22, 2000, constituted a final judgment, then it is possible that Sec. 156 has interfered with plaintiffs' intervening rights to the relief found in that order. The question of when a judgment becomes final was addressed at some length by the Supreme Court in *Plaut.* The Supreme Court concluded that although a judgment might have been rendered by a trial court, retroactive changes in the law can still impact the final outcome of a case so long as an appeal remains pending. That, reasoned the Court, is because a final judgment is not just the judgment of the trial court, but of the judicial branch of government. As the Court reasoned,

> a distinction between judgments from which all appeals have been forgone or completed, and judgments that remain on appeal (or subject to being appealed), is implicit in what Article III creates: not a batch of unconnected courts, but a judicial department composed of "inferior Courts" and "one supreme Court." Within that hierarchy, the decision of an inferior court is not (unless the time for appeal has expired) the final work of the department as a whole. It is the obligation of the last court in the hierarchy to give effect to Congress's latest enactment, even when that has the effect of overturning the judgment of an inferior court, since each court, at every level, must "decide according to existing laws." Having achieved finality, however, a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable to the case was something other than what the courts said it was.

*Plaut,* 514 U.S. at 226–27, 115 S.Ct. at 1457 (citations omitted).

Considering this direction from *Plaut* and the procedural posture of this case, it can hardly be said that the Court's Memorandum and Order of September 22, 2000, constituted a final judgment. Pursuant to Rule 59(e), on October 5, 2000, defendants filed a timely motion to alter or amend the Court's judgment. It is well settled that a timely post-judgment motion eliminates the finality of, and reopens, the earlier judgment. *See generally Varley v. Tampax, Inc.,* 855 F.2d 696, 699–700 (10th Cir.1988); *United States v. Hollis,* 424 F.2d 188, 191 (4th Cir.1970). Furthermore, the filing of a motion to alter or amend a judgment tolls the time for appeal, provided that the motion was substantive and timely. *See Ramsey v. Colonial Life Ins. Co. of Am.,* 12 F.3d 472, 477–78 (5th Cir.1994); *Charles v. Daley,* 799 F.2d 343, 347 (7th Cir.1986); *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 40–41 (2d Cir.1982). Thus, if defendants' motion was substantive and timely, it eliminates the finality of the Court's September 22 judgment.

There is no question that defendants' motion was timely. The Court's order and memorandum was filed on September 22, 2000. Pursuant to Fed.R.Civ.P. 6(a), which pertains to the computation of time, the 10–day period of time for filing a Rule 59(e) motion ended on October 6, 2000. Since the motion was filed on October 5, 2000, it is timely.

The motion is also substantive. Generally, the basic grounds for a Rule 59(e) motion are: 1) to take account of an intervening change in controlling law; 2) to take account of newly discovered evidence; 3) to correct clear legal error; and 4) to prevent manifest injustice. *Harvey v. District of Columbia,* 949 F.Supp. 878, 879 (D.D.C.1996). The motion to alter or amend, in part, asked the Court to amend the order to conform with Section 105(c) of the District of Columbia Financial Responsibility and Management Assistance Act of 1995, Pub.L. No. 104–8, 109 Stat. 97 (1995)("FRMAA"), which provides that an

injunction against the Control Board shall not take effect until all avenues of appeal have been exhausted. Furthermore, the Control Board requested the Court to provide some period of time for the District to implement the declaratory relief ordered by the Court. Without reaching any conclusion as to the merits of the motion to amend, it is clear that the motion itself was substantive.[4]

Since the finality of the September 22, 2000, judgment was eliminated by the subsequent Rule 59(e) motion, the congressional ratification does not interfere with rights arising out of that judgment. Plaintiffs have not made a showing as to any other intervening rights with which the congressional ratification would impermissibly interfere. The Court, therefore, concludes that Sec. 156 does not impermissibly interfere with intervening right.

### CONCLUSION

In conclusion, the congressional ratification of the Control Board's order was valid. Congress intended to ratify that order, Congress had the authority to authorize the Control Board's order as an original matter, and the ratification does not impermissibly interfere with intervening rights. The requirements of *Thomas v. Network Solutions* are satisfied. With the congressional ratification, the Control Board's order is no longer *ultra vires*, and shall be given full force and effect pursuant to that ratification.[5]

For the reasons contained in this memorandum, defendants' Motion to Dismiss the First Amended Complaint is granted. An appropriate order accompanies the memorandum.

---

**4.** Plaintiffs complain that since Sec. 156 was first proposed by Representative Istook on July 25, 2000, "defendants could have, but did not, notify this Court of the possibility of congressional action prior to the Court's issuance of the Order. Nor was mention made of the pending legislation in defendants motion to alter or amend judgment, filed October 5, 2000." Plaintiffs' Opposition at 11. While the Court is sympathetic to this point, since notification about the pending legislation could have saved both the Court and plaintiffs time and effort, it is irrelevant to this inquiry. Since the Rule 59(e) motion was timely and substantive, the September 22, 2000, judgment was no longer final.

**5.** Although the Court is compelled to reach this result, the Court does so reluctantly and with regret for the effect this ruling may have on those who serve the public as employees of the District of Columbia.